FILED IN CHAMBERS
U.S.D.C. - Atlanta

AUG 13 2015

James N. Hatten, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHATTAHOOCHEE RIVERKEEPER,
INC.,

        Plaintiff,

v.

AMERICAN SEALCOAT
MANUFACTURING LLC,

        Defendant.

CIVIL ACTION NO.
1:14-CV-2458-ODE

ORDER

This case, alleging that American Sealcoat Manufacturing LLC unlawfully discharged pollutants without a permit into the Chattahoochee River and an unnamed tributary to the River, comes before the Court on Plaintiff's Motion for Judgment on the Pleadings [Doc. 32]. The Motion follows the Clerk's entry of default against Defendant. For the following reasons, Plaintiff's Motion for Judgment on the Pleadings [Doc. 32] is GRANTED.

I. **Procedural History**

On July 20, 2014, Plaintiff Chattahoochee Riverkeeper, Inc., initiated this citizen suit pursuant to section 505 of the Federal Water Pollution Control Act (the "Clean Water Act"), 33 U.S.C. § 1365, in the Northern District of Georgia. The Complaint seeks civil penalties payable to the United States Treasury.

Defendant retained counsel and timely filed an Answer on September 11, 2014 [Doc. 10]. On December 26, 2014, counsel for Defendant moved to withdraw as attorney of record [Doc. 24]. The Court granted the motion on January 16, 2015, and directed Defendant to have new counsel file a notice of appearance with the

Clerk of Court no later than February 17, 2015 [Doc. 25].  The
Court cautioned that failure to comply could result in Defendant's
Answer being stricken.

Defendant failed to comply with the Court's January 16, 2015
Order, and on March 11, 2015, the Court ordered Defendant to show
cause in writing why the Answer should not be stricken and a
default entered against it [Doc. 26].  Defendant again failed to
comply.  On April 7, 2015, the Court struck Defendant's Answer and
directed the Clerk to enter default against Defendant [Doc. 27].
The Court further directed Plaintiff to file any and all
appropriate motions to dispose of this case.

On June 12, 2015, Plaintiff filed the instant unopposed
Motion for Judgment on the Pleadings [Doc. 32], which is now ripe
for the Court's review.

II.  **Legal Standard**

The Court notes as an initial matter that it will treat
Plaintiff's Motion as one for default judgment under Rule 55 of
the Federal Rules of Civil Procedure.  Judgment on the pleadings
under Rule 12(c) is proper only after the pleadings have closed--
generally after the filing of a complaint and an answer.  5C
Charles Alan Wright, et al., Federal Practice & Procedure § 1367
(3d ed. 2004).  Here, however, the Court has stricken Defendant's
Answer and will proceed as though no answer had been filed.  In
such cases, it is proper "to move for a default judgment under
Rule 55 rather than seek a judgment on the pleadings."  Id.

The entry of default judgment under Rule 55 generally is
"committed to the discretion of the district judge."  Mason v.

<u>Lister</u>, 562 F.2d 343, 345 (5th Cir. 1977) (citation omitted).[1]  In reviewing the motion, the Court deems the well-pleaded allegations of the complaint to be admitted by the defaulting party by virtue of the default.  <u>Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.</u>, 561 F.3d 1298, 1307 (11th Cir. 2009).  Nevertheless, the Court must examine the pleadings along with any affidavits or declarations filed by the plaintiff to ensure that there is a sufficient basis for the judgment entered.  <u>Nishimatsu Const. Co. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975).

## III. **Factual History**

Defendant is a Georgia limited liability company that operates an industrial facility at 525 Frederick Court SW, Atlanta, Georgia 30336 (the "Facility") [<u>Id.</u> ¶¶ 8-9].  Defendant manufactures asphalt emulsion pavement sealcoat and related products at the Facility [<u>Id.</u> ¶ 17].

According to the Complaint, Defendant has discharged various pollutants from the Facility into the Chattahoochee River (the "River") and an unnamed tributary without a permit on an on-going basis beginning at least as early as June 1, 2012 [<u>Id.</u> ¶¶ 11, 46].  Specifically, rain water falling on exposed industrial materials stored outside the Facility picks up pollutants and carries them through point sources to nearby waters, including the River and its tributary [<u>Id.</u> ¶ 18].  Rain water also causes erosion and sedimentation of exposed soil at the Facility, resulting in

---

[1]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding all decisions of the former Fifth Circuit issued on or before September 30, 1981.

pollutant-laden storm water being discharged through point sources into the River and an unnamed tributary [Id.]. Additionally, Defendant directly discharges a black oily liquid and other pollutants associated with its industrial activities from the Facility through a discharge pipe into the River and an unnamed tributary [Id. ¶ 19].

On May 28, 2014, Plaintiff, a Georgia non-profit corporation that advocates for the protection of the River system, sent a sixty-day notice letter to Defendant and to the appropriate authorities as required by section 505(b) of the Clean Water Act explaining its intent to bring a citizen suit against Defendant [Id. ¶¶ 3, 7].[2] After sixty days had elapsed from the date of notice, Plaintiff filed its Complaint in the instant case seeking injunctive relief and civil penalties for on-going violations of the Clean Water Act [Id. ¶ 4].

IV.  **Discussion**

Plaintiff alleges that Defendant's discharge of pollutants into the River is regulated by sections 301(a) and 402 of the Clean Water Act.  Section 301 prohibits the discharge of pollutants from point sources into waters of the United States except in accordance with standards promulgated and permits issued under other sections of the Clean Water Act.  33 U.S.C. § 1311(a). Section 402 authorizes the administrator of the EPA to issue

---

[2]Plaintiff's members recreate and fish in and on the River and thus have a recreational, aesthetic, and environmental interest in the quality of the River system [Id. ¶ 10].  The degraded quality of water and destruction of aquatic life resulting from Defendant's discharge of pollutants allegedly has impaired those interests [Id. ¶ 11].

4

National Pollution Discharge Elimination System ("NPDES") permits for the discharge of pollutants into navigable waters when certain specified conditions are met.  33 U.S.C. § 1342(a).  See also Atl. States Legal Found., Inc. v. Tyson Foods, Inc., 897 F.2d 1128, 1130 (11th Cir. 1990).  Pursuant to section 402(b), the EPA has delegated this authority to the State of Georgia.  33 U.S.C. § 1342(b).  In this case, Defendant's conduct is regulated by the General NPDES Permit for Storm Water Discharges Associated with Industrial Activity, GAR050000 (the "General Permit"), issued by the Georgia Environmental Protection Division (the "EPD").

In total, Plaintiff cites eight violations of the Act based on Defendant's conduct.  First, Plaintiff contends that Defendant has discharged pollutant-laden storm water without a permit in violation of sections 301(a) and 402 [Id. ¶ 27].  Plaintiff also contends that Defendant has violated seven provisions of Georgia's General Permit by: (1) failing to prepare a Storm Water Pollution Prevention Plan for its activities at the Facility in accordance with Part 5; (2) failing to conduct storm water sampling and monitoring in accordance with Part 6; (3) failing to provide monitoring data, annual reports, and additional reporting to the EPD in accordance with Part 7; (4) failing to conduct regular inspections of the Facility in accordance with Part 4; (5) failing to retain records related to its storm water and storm water control practices in accordance with Part 7.5; (6) failing to document and report violations of the General Permit to the EPD in accordance with Parts 6.31 and 7.3; and (7) failing to properly design, install, and maintain adequate control measures for storm water at the Facility in accordance with Part 2.1.  These

5

violations began at least as early as June 1, 2012, and were on-going until the date of filing of the instant motion--that is, for a period of 1108 days.

Having reviewed the Complaint, the Court finds that the well-pleaded allegations establish Defendant's liability for on-going violations of the Clean Water Act. Each violation subjects Defendant to a maximum penalty of $37,500 per day. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4 (adjusting the $25,000 statutory daily civil penalty to $37,500 for violations occurring after January 12, 2009). Thus, based on the allegations in the Complaint, Defendant is subject to a maximum penalty of $332,400,000.00 (8 violations x 1108 days x $37,500 per day).

In this case, the statutory maximum penalty cited above is neither reasonable nor plausible, and Plaintiff stipulates that a reduction of the penalty to $10 million would be justified [Doc. 32-1 at 6]. In reducing a maximum penalty, the Court must apply the factors set out in 33 U.S.C. § 1319(d), including the "seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." Here, there is a limited basis for assessing the 1319(d) factors because Defendant is in default and the factual record is limited to the allegations of the Complaint. The Court therefore will accept Plaintiff's stipulation that a penalty of $10 million will be reasonable and adequate to deter future acts of pollution [see Doc. 32-1 at 7].

**V.   <u>Conclusion</u>**

In sum, the Court treats Plaintiff's Motion for Judgment on the Pleadings [Doc. 32] as a Motion for Default Judgment.  For the foregoing reasons, Plaintiff's Motion [Doc. 32] is GRANTED.  The Clerk is DIRECTED to enter a judgment assessing a civil penalty of $10 million against Defendant, to be paid to the United States Treasury.  The Clerk is further DIRECTED to close this case.

SO ORDERED, this __/3__ day of August, 2015.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

7